IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| 1-800 CONTACTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LENS.COM, INC. d/b/a LENS.COM, INC., JUSTLENS.COM and JUSTLENSES.COM, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 2:07-cv-591 CW <br><br> Judge Clark Waddoups |

### INTRODUCTION

Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts") filed suit against Defendant Lens.com, Inc. ("Lens.com") for various claims relating to 1-800 Contacts' trademark. On December 14, 2010, the court granted summary judgment in favor of Lens.com. Now, Lens.com moves the court for an award of attorney fees and costs on the basis that 1-800 Contacts' litigation tactics and strategies constitute an "exceptional" circumstance that justifies such an award. The court has reviewed the motion and concludes that oral argument would not materially assist in the determination of it. It therefore rules based upon the briefs and hereby denies the motion.

### BACKGROUND[1]

**Suit Against Lens.com**

On August 13, 2007, 1-800 Contacts filed suit against Lens.com for alleged willful

---

[1] The court includes only an abbreviated background because the facts were set forth extensively in the court's summary judgment ruling. *See* Docket No. 267.

infringement of 1-800 Contacts' trademark "1 800CONTACTS." 1-800 Contacts also asserted claims for "breach of contract, . . . unfair competition, false designation of origin, false advertising, passing off, and unjust enrichment." Complaint, ¶ 1 (Dkt. No. 1). The suit pertained to "keywords" and Internet advertisements. When a person enters a search term on the Internet, the search engine compares that term to "keywords" purchased by an advertiser. If the search term matches the keyword purchased by the advertiser, a link to that advertiser's web page appears on the search results page. 1-800 Contacts found that when it entered its trademark as the search term, an advertisement associated with Lens.com appeared on the search results page. It therefore alleged that Lens.com had purchased its trademark as a keyword and thereby infringed upon 1-800 Contacts' trademark through such use.

**1-800 Contacts' Demand Letters**

Prior to filing suit, 1-800 Contacts sent letters and e-mails to Lens.com on several occasions between 2005 through 2007, which demanded that Lens.com cease all infringing activity. 1-800 Contacts also demanded that Lens.com take steps to preclude a Lens.com advertisement from appearing anytime "1-800 Contacts" was entered as a search term. On each occasion, Lens.com investigated the claim and informed any affiliate who was purchasing 1-800 Contacts' trademark as a keyword to desist. Lens.com then reported back to 1-800 Contacts the actions it had taken. When Lens.com advertisements again appeared in 2007, 1-800 Contacts filed this action. Besides asserting trademark infringement, it asserted Lens.com had breached the contract that had been created by these communications.

**Settlement Negotiations**

The parties entered into settlement negotiations shortly after the suit was filed. Lens.com contends that it could not agree to settle, though, because the terms 1-800 Contacts demanded were onerous and focused on eliminating or reducing competition between Lens.com and 1-800 Contacts. For instance, 1-800 Contacts demanded that no Lens.com ad would appear in response to a long list of phrases or words provided by 1-800 Contacts. It also demanded $10,000 per day in liquidated damages if Lens.com or one of its affiliates engaged in a prohibited act, with an additional $10,000 per day if a subsequent "violation" occurred within six-months of a previous violation. Lens.com determined it had to incur the cost of litigation because it could not agree to these demands.

Lens.com asserts that 1-800 Contacts regularly sues smaller competitors and extracts such agreements because the smaller competitors cannot bear the costs of litigation. 1-800 Contacts does not deny that it has sued thirteen other companies in Utah alone, but contends such suits are necessary to protect its trademark. Moreover, it defends the settlement terms on the basis that 1-800 Contacts agrees to be bound by the same provisions it demands from its competitors.

**1-800 Contacts' Amended Complaint**

Approximately one year after filing suit against Lens.com, 1-800 Contacts moved to amend its complaint to add a count for secondary liability for trademark infringement. It asserted that Lens.com affiliates had purchased 1-800 Contacts' trademark as a keyword; and thus, Lens.com was liable for joint, contributory, or vicarious infringement. *See* Memo. in Supp. of Mot. to Amend Complaint, 1 (Dkt. No. 54). Lens.com asserts that 1-800 Contacts moved to amend because it learned during discovery that Lens.com had *not* purchased 1-800 Contacts' trademark as a keyword.

Instead, out of numerous keywords that Lens.com had purchased, only nine were variations or misspellings of the trademark. In total, Lens.com derived $20.51 in profits off of those nine keywords.

Despite this knowledge, 1-800 Contacts continued to press its claim for direct infringement in its amended complaint. Meanwhile, Lens.com learned during discovery that *1-800 Contacts* had purchased variations of Lens.com's trademarks as keywords. Notably, 1-800 Contacts had derived $219,314 in profits off of those keyword purchases compared to Lens.com's $20.51. Thus, 1-800 Contacts was suing Lens.com for the same activity in which it had engaged.[2]

**Discovery Disputes**

Lens.com also contends that 1-800 Contacts employed improper discovery tactics to increase the burden and costs of litigation. Discovery problems existed throughout this litigation, but it is Lens.com that was sanctioned for discovery abuses. In April 2008, 1-800 Contacts moved to compel Lens.com to answer interrogatories and produce documents. Magistrate Judge David Nuffer granted the motion and warned Lens.com about "the perils of non-compliance with" his order. Memorandum Decision, 2 (Dkt. No. 141). A district judge later affirmed the decision and further warned Lens.com "against further obstructions and dilatory conduct." *Id.* at 3.

Despite these warnings, Lens.com continued to withhold discovery that it had been ordered to produce. What discovery it did provide contained false information. *Id.* at 4. Accordingly, Judge Nuffer ordered Lens.com to pay attorney fees and recommended that Lens.com not be allowed to introduce certain evidence at trial. *Id.* at 5 6. Judge Nuffer further ordered Lens.com to supplement

---

[2] The facts pertaining to keyword purchases and profitability were brought forward in the summary judgment briefs and the court finds they bear on its determination of this motion.

-4-

its discovery. *Id.* at 6. This district judge affirmed Judge Nuffer's order and adopted his recommendation. *See* Order (Dkt. No. 213).

Subsequently, Lens.com filed its own motion to compel. Judge Nuffer previously had granted permission for Lens.com to take the deposition of a witness, but he limited the scope and length of the deposition. After taking the witness's deposition, Lens.com moved to lengthen the time of it on the basis that 1-800 Contacts had obstructed the deposition. When Judge Nuffer reviewed the deposition transcript, however, he found that Lens.com had violated his order by asking questions beyond the specified scope. Memorandum Decision, 3 (Dkt. No. 190). Moreover, Lens.com had failed to "meet and confer" before it filed its motion. *Id.* at 4. Judge Nuffer again awarded attorney fees against Lens.com. *Id.*

**Expert Reports**

Finally, Lens.com contends that 1-800 Contacts submitted improper expert opinions, which unnecessarily increased the costs of litigation. The court struck a portion of one report because it went beyond the scope of a court order. The court struck a survey and part of a second report because it did not meet Rule 702 requirements. Lens.com asserts use of these expert opinions is just one more example of 1-800 Contacts' bad faith in pursuing this litigation.

## ANALYSIS

I.     **ATTORNEY FEES UNDER THE LANHAM ACT**

Lens.com moves for an award of attorney fees and costs pursuant to 15 U.S.C. § 1117(a) of the Lanham Act. Section 1117(a) states, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." One means of proving an exceptional case is to show a "suit

was 'unfounded.'" *Nat'l Assoc. of Professional Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000) (citing S. Rep. No. 93-1400, at 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133).  This is an objective standard.  A prevailing party also may show that "the suit was brought by the trademark owner 'for harassment and the like.'" *Id.*  This is a subjective standard.  Additionally, a court may take into account equitable considerations. *Id.* at 1147.  The Tenth Circuit articulates the objective and subjective standards as follows:

> an infringement suit could be "exceptional" for a prevailing defendant because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well.

*Id.*  Ultimately, however, "the award of attorney fees is vested in the discretion of the district court." *Id.* at 1146.

Here, Lens.com asserts that 1-800 Contacts' "Lanham Act claims lacked any factual or legal basis from the outset." Memo. in Supp. of Mot. for Award of Attorney Fees, 1 (Dkt. No. 271).  The court disagrees.  The main legal issue in this case involves an unsettled area of law given the emerging and changing nature of Internet competition.  The Tenth Circuit has never expressly addressed whether purchasing another's trademark as a keyword constitutes trademark infringement, and such cases have survived motions to dismiss in other jurisdictions.  Consequently, 1-800 Contacts had a legitimate interest in clarifying its rights.  Moreover, once 1-800 Contacts obtained discovery, the evidence showed that Lens.com did purchase variations of 1-800 Contacts' trademark, even though such purchases were minuscule.  1-800 Contacts also had a larger claim based on secondary liability.  Given the developing nature of the law in this area, and the fact that the case was

proceeding on secondary liability, it was not unreasonable for 1-800 Contacts to continue pursuing its claim for direct infringement.

Lens.com further asserts, however, that "the real thrust of [its] motion" is "1-800's improper motives and vexatious conduct in bringing and carrying out this case." Reply Memo. in Supp. of Mot. for Award of Attorney Fees, 2 (Dkt. No. 291). The court concurs some of 1-800 Contact's behavior is troubling, particularly with respect to its settlement demands and suing others for the same actions in which it engages. The court does not condone anti-competitive actions.[3]

On the other hand, Lens.com has been sanctioned on more than one occasion, in this case, for obstructive actions during discovery. While Lens.com argues that its actions were justified given the overreaching nature of 1-800 Contacts' discovery requests, Judge Nuffer found to the contrary. Moreover, his findings were affirmed by two district court judges. Accordingly, the court will not revisit this issue. With respect to the expert opinions offered by 1-800 Contacts, the court agrees that they increased the costs of litigation. They also increased the burden on the court. The opinions, however, were partially admitted, and therefore, not wholly without merit

Viewing all the facts in totality, the court finds that neither party was fully candid with the court or its processes. The court further finds that 1-800 Contacts' actions raise questions about vexatious suits to defeat competition, but more facts would need to be developed than what have been presented to the court. Although 1-800 Contacts was aggressive in pursuing its claims in this

---

[3] Lens.com has filed a pending lawsuit in the United States District Court for the District of Nevada, *Lens.com v. 1-800 Contacts, Inc.*, Case No. 2:11-cv-00918, complaining about alleged anti-competitive and abusive litigation tactics by 1-800 Contacts. Nothing in this decision is intended to address or resolve any of the issues raised in that law suit. Indeed, that action is the proper forum to address and resolve the complaints asserted in this motion rather than testing them as creating "exceptional" circumstances for an award of attorneys fees.

case, and in hindsight the expense may have been greater than necessary to protect those rights, the court cannot conclude on this record that 1-800 Contacts' course of action was so unjustified to meet the requirements for an exceptional case. The court therefore exercises its discretion and declines to award attorney fees to Lens.com.[4]

## II. ATTORNEY FEES UNDER STATE LAW

Lens.com also moves for attorney fees and costs pursuant to Section 78B-5-825 of the Utah Code. The statute states, "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action . . . was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825 (2011). "It is within the district court's discretion to determine whether matters were filed without merit and not in good faith." *Ninow v. Copier (In re Estate of Pahl)*, 2011 UT App 56, ¶ 5, 252 P.3d 865 (citation omitted).

Lens.com asserts that 1-800 Contacts' claim for breach of contract falls under this provision because it was based on "a series of indefinite emails" and a "non-credible" declaration. Memo. in Supp. of Mot. to Award Attorney Fees, 9 (Dkt. No. 271). The court notes, however, that Lens.com sought to amend its answer at the same time that 1-800 Contacts moved to amend its complaint. Lens.com's proposed amended answer contained a counterclaim for breach of contract based on the same exchange of letters and e-mails that 1-800 Contacts used in its breach of contract claim. *See* Proposed First Amended Answer, 17, 21 (Dkt. No. 52, Ex. 9). It is therefore curious that Lens.com

---

[4] 1-800 Contacts stated in its opposition that Lens.com's motion justifies an award of attorney fees to 1-800 Contacts. The court notes that 1-800 Contacts has failed to comply with local rules regarding its "motion." It is therefore not properly before the court. Even if it were properly before the court, 1-800 Contacts has failed to show it is entitled to attorney fees under the Lanham Act.

seeks to recoup attorney fees on this claim.

1-800 Contacts also asserted other claims based on unfair competition, unjust enrichment, and violation of the Utah Unfair Practices Act. Lens.com contends it should be awarded attorney fees on these claims because 1-800 Contacts expended no effort to develop them. This is not fully correct. 1-800 Contacts argued that its unfair competition claim was based on the same facts that supported its Lanham Act claim. Moreover, while the court disagreed with 1-800 Contacts' alternative argument pertaining to unjust enrichment, it was not a meritless claim on its face. Thus, the only claim that 1-800 Contacts expended no effort to develop was its unfair practices claim. Because 1-800 Contacts did not develop this claim, Lens.com likewise had to spend little time defending it. Lens.com devoted a little more than a page regarding it in its ninety-two page summary judgment motion. The court finds the purpose of the statute is not served by awarding attorney fees under such conditions and hereby denies Lens.com's motion.

## CONCLUSION

For the reasons stated above, the court DENIES Lens.com's Motion for Award of Attorneys' Fees and Costs.[5]

DATED this 12th day of January, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[5] Docket No. 270.